W. W. Pope and Gladys M. Pope v. Commissioner.
Pope v. Commissioner
Docket No. 4410-63.
United States Tax Court
T.C. Memo 1965-211; 1965 Tax Ct. Memo LEXIS 119; 24 T.C.M. (CCH) 1096; T.C.M. (RIA) 65211; August 4, 1965
Melvin M. Engel, 828 Lincoln Liberty Life Bldg., Houston, Tex., for the petitioners. John D. Laflin, for the respondent. FAY
Memorandum Opinion FAY, Judge: Respondent determined deficiencies in the income taxes of petitioners for the taxable years 1958 and 1959 in the amounts of $6,252.10 and $27,488.74, respectively. Petitioners assert that they overstated their taxable income in the years 1958 and 1959 in the respective amounts of $21,384.80 and $24,037.47, respectively. The issues for decision are (1) *120 whether petitioners may elect to report income received from the sale of houses constructed on property owned by customers under the installment method pursuant to section 453 of the Internal Revenue Code of 1954[1] and (2) whether certain income omitted by petitioners in 1957 may be included in income for the year 1958 under the provisions of section 481. [2]
All of the facts are stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners are husband and wife who reside in Houston, Texas. They filed joint Federal income tax returns for the years 1958 and 1959 with the district director of internal revenue, Austin, Texas. On November 20, 1955, petitioner W. W. Pope (hereinafter referred to as petitioner) *121 entered into the business of constructing houses on land owned by the purchaser. At his place of business petitioner had six model houses from which a prospective purchaser could make a selection. There is a basic price for each model. The price to a purchaser may be increased due to the purchaser's choice of siding, roofing, flooring, doors, paneling, built-ins, addition of central heating and air conditioning, type and number of baths, and garage. At his place of business petitioner precuts some of the lumber used in the construction of the houses. Petitioner subcontracts the slab, framing, plumbing, wiring, floor nailing, sheet rock, cabinets, tile, brick, siding, trim, air conditioning, and insulation. Petitioner requires that each lot on which he builds a house be free and clear of all encumbrances. In transactions where purchasers have a credit rating which is acceptable to petitioner, the customer executes a negotiable deed of trust note which is secured by a deed of trust on the property. A large number of the deed of trust notes received by petitioner from customers in the years before the Court were sold to the Ben Franklin Savings and Loan Association, Houston, Texas, *122 at 95 percent of the outstanding principal balance of these notes without recourse. A small portion of the deed of trust notes received by petitioner from purchasers in the years before the Court was sold to the Guaranty Federal Savings and Loan Association, Houston, Texas, at face value (outstanding principal balance) subject to the right of the Association to have recourse for approximately 9 percent of the proceeds of each note. The restricted proceeds from each loan were set aside for petitioner in a special savings account. The restriction is removed when the principal balance of the note is reduced to the amount of the restricted fund. The deed of trust notes which were not sold to the Ben Franklin Savings and Loan Association and to the Guaranty Federal Savings and Loan Association were retained by petitioner. In the calendar years 1958 and 1959 petitioner reported, on the installment method pursuant to section 453, [3] as taxable income from the sales of houses, $27,629.69 and $79,917.65, respectively. Respondent, by placing petitioner on an accrual basis, determined *123 deficiencies in petitioner's income taxes for the calendar year 1958 in the amount of $6,252.10 and for the calendar year 1959 in the amount of $27,488.74. Opinion The principal issue to be decided in the instant case is whether petitioner may elect to report income received from the sale of houses constructed on customers' property under the installment method pursuant to section 453. The installment method of reporting income applies to income derived from sales of both personal property and real property. In the case of personal property, the installment method covers (1) all sales made by dealers in personal property and (2) casual sales or other casual dispositions by others of personal property. Respondent asserts that petitioner is a building construction contractor who primarily renders services and, therefore, is not a dealer in personal property or real property. Furthermore, respondent contends that petitioner's building transactions do not qualify as sales of real property within the meaning of section 453(b)(1)(A) inasmuch as the houses are constructed on customers' property. Petitioner contends that each contract entered into in the regular course of his business *124 constitutes a sale of either real or personal property; and, regardless of whether real or personal property was sold, he would be entitled to utilize the installment method of reporting income. We will first deal with respondent's contention that petitioner is not a dealer in personal property because he is a building construction contractor who primarily renders services. The amalgamation of petitioner's services, his architectural plans, his lumber and various other building materials, and the performance of subcontractors clearly produce dwelling houses which indisputably constitute a traditional form of property. We are faced with the question of whether petitioner sold the foregoing completed structures (property) or whether petitioner was compensated for his services in bringing about such completed structures. In G.C.M. 27169, 1952-2 C.B. 120, respondent stated that a taxpayer regularly engaged in the sale, on the installment plan, of prefabricated houses constructed in his own factory is a dealer in personal property within the meaning of the installment sales provisions. The problem in the instant case lies in the fact that except for some precut lumber, *125 the houses were constructed on customers' lots. Would that we were aided in this problem ringing of medieval logistics by an Abelard or Aquinas skilled in ascertaining the true nature of abstractions. However, in their absence, we believe that in petitioner's house transactions there was contemplated and there occurred in each instance a sale and delivery of personal property, to wit, a dwelling house. Petitioner is no more engaged in the sale of services than any other dealer in personal property who is also the fabricator of such property. [4] Although the houses built and sold by petitioner were not prefabricated, neither were they "custom built" to conform to an individual customer's taste or demand. In actuality, there was involved in the instant case the sale of standardized products which, except for the place of manufacture, were similar in substance to the sale of any commodity. Petitioner's customers, similar to buyers of furniture in a manufacturer's retail outlet, selected one of six basic model houses (offered by petitioner), each available with slight variations. However, unlike buying furniture (or the prefabricated houses involved in G.C.M. 27169, supra) *126 the standardized products involved here were manufactured on customers' own lots. This procedure was dictated solely by the nature of the product petitioner was selling, to wit, dwelling houses. We are convinced that petitioner held himself out as, and was, in fact, a dealer selling his own variety of dwelling houses. Petitioner did not hold himself out as, nor was he, a building construction contractor primarily offering his services to suit the whims and fancies of potential householders. We believe that petitioner's sales transactions were, in fact, sales of personal property. As such, petitioner may elect to report income under the installment method pursuant to section 453. Consequently, we do not find it necessary to consider respondent's second contention that petitioner's transactions were not sales of real property. Therefore, we find for petitioner on this issue. Respondent agrees that if the petitioner may elect to use the installment method, the second issue *127 is moot. Therefore, we do not consider it. Petitioner contends that, in using the installment method of reporting income, he inadvertently failed to report that portion of business expense applicable to installment sales, thereby overstating taxable income on his income tax return for the calendar year 1958 in the amount of $21,384.80 and for the calendar year 1959 in the amount of $24,037.47. Consequently, petitioner asserts a claim for overpayment for the years 1958 and 1959. Respondent does not challenge the fact that if petitioner is entitled to use the installment method, he would be entitled to a refund arising from this issue. Therefore, the amount of the refund will be left for determination under a Rule 50 computation. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended. ↩
2. Respondent concedes that if the Court should find that petitioners are entitled to use the installment method of accounting for income in the years before the Court, section 481(a)(2) and (b)(2) would have no application to the instant case in view of section 481(d).↩
3. In 1957 petitioner adopted the installment method of reporting income pursuant to section 453↩.
4. Respondent does not contend that a taxpayer who manufactures property and also retails it cannot be a dealer in such property within the scope of sec. 453. See G.C.M. 27169, 1952-2 C.B. 120↩.